Filed 10/8/13  Cooper v. HSBC Bank CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BARBARA COOPER et al., | B246455 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC466657) |
| v. | |
| HSBC BANK USA, as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James R. Dunn, Judge.  Affirmed.

Barbara Cooper and Ellen Cooper, in pro. per., for Plaintiffs and Appellants.

Soloman, Grindle, Silveramn & Wintringer, Christopher A. Lidstad and Holly J. Nolan for Defendant and Respondent.

_____

Barbara and Ellen Cooper (Appellants) seek to unwind the foreclosure of their home by HSBC Bank USA as Trustee for MLCC 2007-3 (HSBC). The trial court sustained HSBC's demurrer without leave to amend. We conclude Appellants lack standing to assert their claims against HSBC. The judgment is affirmed.

**FACTS**

In 2005, Barbara,[1] and her husband, William Cooper, both in their eighties, held a $237,000 mortgage on their home in Los Angeles which they sought to refinance. They submitted an application to Jimmy Pereda, who informed them that they did not qualify for a loan due to their low credit score. Pereda then convinced the Coopers to transfer title of the home to his name. A grant deed was recorded transferring title to Pereda on June 23, 2005. He obtained a loan secured by the Coopers' home totaling $460,000 in 2007, thus withdrawing over $200,000 in equity from the home after paying off the Coopers' original mortgage. That loan was assigned to HSBC on February 3, 2009.

In 2007, the Coopers sued Pereda and his company for fraud. Pereda's company had declared bankruptcy and did not participate in the litigation. Pereda entered into a global settlement with the Coopers. The settlement terms were entered into the record by the trial court. It entitled the Coopers to a sum of $75,000, with $25,000 to be paid by December 29, 2008, and twice-monthly payments of $1,388 beginning on January 15, 2009, until paid in full. If Pereda defaulted on the settlement, the Coopers were free to seek an ex parte judgment of $250,000 against him, less any payments made. Pereda also agreed to shortsale the home back to the Coopers for $360,000 -- subject to bank authorization. William died around the time of the settlement.

A notice of default on the home was issued on December 5, 2008. HSBC executed a nonjudicial foreclosure on the home on October 26, 2009. HSBC then filed an unlawful detainer action in Santa Monica Superior Court against Barbara and her daughter, Ellen, on December 21, 2010. That matter is currently on appeal. Meanwhile,

---

[1] For convenience, we will refer to the Coopers by their first names.

Pereda defaulted on the settlement and a money judgment was entered on November 24, 2009, against him for $226,829.66.

Appellants brought suit in pro. per. against Barbara's former attorney, Paul Gianinni,[2] and HSBC on August 1, 2011, alleging claims for legal malpractice, negligence, fraud, elder financial abuse and breach of fiduciary duty. The bulk of the allegations described the fraud committed by Pereda and the malpractice committed by Gianinni. In this initial complaint, Appellants alleged that Pereda forged the deed of trust transferring title to his name and neither Barbara nor William ever consented to transfer title to Pereda. They also alleged that Gianinni coerced Barbara into the settlement at a time when she was emotionally vulnerable after William's death. Further, that Gianinni then misappropriated the funds. The complaint also alleged that as part of the global settlement with Pereda, Appellants understood that they could remain in possession of the property without payment of rent until it was sold. The complaint further alleged HSBC nevertheless began unlawful detainer based on an expired lease and fraudulently sought to harass Appellants for back rent.

A first amended complaint was filed before HSBC's demurrer to the initial complaint could be heard. This complaint alleged nine causes of action and focused on HSBC's purportedly wrongful actions. In particular, the SAC alleged that HSBC "robosigned" the trustee deed upon sale as well as committed other irregularities associated with the foreclosure proceeding. HSBC again demurred and the trial court sustained the demurrer with leave to amend. Among other things, the trial court found that Barbara and Ellen lacked standing to sue to set aside the trustee's sale and to void the assignment of the deed of trust because they were not the borrowers under the subject deed of trust.

---

[2] Gianinni failed to respond to the pleadings and Appellants filed a request for entry of default on the first amended complaint on August 14, 2012. The clerk rejected the request for entry of default on the ground that the second amended complaint was filed the same day and thus, default could not be entered on the first amended complaint. The record does not contain any requests for entry of default on the second amended complaint.

3

The second amended complaint (SAC) contained even fewer factual allegations. In the SAC, Barbara and Ellen alleged causes of action to set aside the trustee's sale, to void or cancel assignment of the deed of trust, for fraud, to quiet title and for slander of title. They alleged that the global settlement reached in the Pereda action was a contract of adhesion. Also, Pereda entered into the settlement with no intention of fulfilling its terms, particularly the sale of the home back to Barbara. In support of this theory, Appellants alleged that HSBC's notice of default and election to sell was issued on December 5, 2008, ten days before the settlement was reached. Thus, Pereda knew he could not short sale the property back to Barbara as promised under the settlement. "Plaintiff Barbara Cooper understands that she is no longer bound by the Settlement Agreement due to [the] fraudulent[] nature of the contract." Appellants also alleged wrongdoing by HSBC. In particular, Appellants alleged the transfer deed was not signed by the person with authority to do so and HSBC did not possess the promissory note. The trial court sustained HSBC's demurrer to the second amended complaint without leave to amend "based on the matters set forth in the moving papers." Barbara and Ellen timely appealed.

## DISCUSSION

Appellants portray this as an elder abuse case but did not actually allege an elder abuse cause of action in the SAC. While an elder abuse claim was alleged in the initial complaint, it was dropped from the first amended complaint and the SAC. This matter instead involves a third party's attempt to unwind a presumptively valid foreclosure. We find Appellants lack standing to challenge the foreclosure proceedings.

In general terms, in order to have standing, the plaintiff must be able to allege injury – that is, some "'invasion of the plaintiff's legally protected interested.' [Citations.]" (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175; see Code Civ. Proc., § 367 ["Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute"].) Neither Ellen nor Barbara hold a "legally protected interest" in the home.

4

Ellen lacks standing because she did not hold title to the home when it was transferred to Pereda. That she was a party in HSBC's unlawful detainer action merely shows that she was a tenant in the home, not a homeowner. Neither was she a party to the action against Pereda. The trial court properly sustained the demurrer as to Ellen on the grounds she lacked standing.

Although Barbara did at one time hold title to the home, she relinquished any claim to that interest when she and William settled their claims against Pereda. Under the terms of the settlement, Pereda agreed to pay Barbara and William $75,000. He also agreed to attempt to sell the home back to Barbara under a short sale arrangement subject to the bank's approval. If he failed to pay the $75,000 settlement in full, Barbara was entitled to receive an ex parte money judgment in the amount of $250,000, less any amount received by Pereda. By entering into this settlement, Barbara acknowledged that she no longer held title to the home. She therefore no longer has a "legally protected interest" in the home. Even if Appellants are successful in setting aside the foreclosure, they have provided no method by which title would automatically revert back to Barbara.

Appellants attempt to avoid the consequences of the settlement by alleging it is void because Pereda never intended to fulfill the terms of the settlement. They also allege that the settlement was a contract of adhesion imposed upon Barbara by her former attorney at a stressful time. Even if these allegations are true, they are insufficient to unwind a valid trustee sale because the remedy for these alleged wrongs lies with Pereda and Gianinni, not HSBC. Indeed, Appellants have shown they are aware of their rights against Pereda and Gianinni: they have sought and received a money judgment of $226,829.66 against Pereda and have sued Gianinni for malpractice.

## DISPOSITION

The judgment is affirmed.  Each party to bear its own costs on appeal.


                                                            BIGELOW, P. J.

We concur:


        RUBIN, J.



        GRIMES, J.


6